## Alexander v. Lewis.

(Decided June 10, 1919.)

### Appeal from Carter Circuit Court.

Appeal and Error—Review—Finding on Conflicting Evidence.— Where the evidence is conflicting, and on a consideration of the whole case the mind is left in such doubt that the Court of Appeals cannot say with reasonable certainty that the chancellor erred in his conclusion, his finding will not be disturbed.

STROTHER & HAMILTON and THEOBALD & THEOBALD for appellant.

JOHN M. WAUGH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM.-MISSIONER—Affirming.

Claiming that he and the defendant, Robert F. Lewis, were partners in the purchase and sale of tobacco, plaintiff, R. H. Alexander, brought this suit to settle the partnership and to recover one-half of the profits. The master commissioner, to whom the case was referred to hear proof and determine whether there was a partnership and to settle the partnership if one existed, reported that there was a partnership and that the profits amounted to $2,051.88. On exceptions to this report, the chancellor decided that there was no partnership, and sustained the exceptions and dismissed the petition. Plaintiff appeals.

Plaintiff testified in substance as follows: He was the president and manager of the Tenth Street Tobacco Warehouse Company, in Louisville. He first became acquainted with the defendant in the month of October, 1916. During that month he had some correspondence with the defendant about acting as agent for the Tenth Street Tobacco Warehouse Company, and possibly buy-

ing a few crops. Some time later, the defendant called to see him and they talked further about the matter, the defendant stating that he wanted to buy a few crops if he could buy them right. About November 4th, he called defendant over the telephone and asked him how he was getting along. Defendant replied that he had bought one or two crops, and he asked defendant if he could buy any more tobacco. Defendant said that he thought he could. He then asked defendant if he could buy it at the right price. Defendant said he could. He then asked defendant if he wanted to go into partnership with him and buy some tobacco; that he had a man there that he would send up to go with him; that the man was a good judge of tobacco and would be a great help to him in making the purchase. Defendant said he would be glad to have him. He had reference to Mr. Harpring. He then explained to Harpring about the conversation and directed him to go to Grayson, Kentucky, and assist the defendant in buying some tobacco. Harpring went the next day. Under this arrangement, defendant and Harpring bought over 100,000 pounds of tobacco. A large portion of the tobacco was sold to Gorin Brothers, and some of it was sold at the Tenth Street Tobacco Warehouse. Under the contract the tobacco was to be shipped there, and the company was to receive a commission for handling the tobacco. While he did not tell defendant that he was to furnish the money, that was the natural conclusion. The money was borrowed from the Tenth Street Tobacco Warehouse Company. The contract of sale to Gorin Brothers was made in the name of Alexander & Lewis. All the time, the business was talked of by him and Lewis as a partnership. There was also a sale of 57,000 pounds of tobacco to Haley & Shelburne at Lexington. Harpring had a great deal of correspondence with defendant, and in that correspondence, Harpring represented plaintiff. Under the agreement between him and defendant, defendant was to receive the tobacco, pay for it, have it prized and deliver it at the depot at his place, while plaintiff was to pay for the tobacco and pay for the sale of it. The accounts with the Tenth Street Tobacco Warehouse Company were kept in the name of R. F. Lewis & Company. The drafts, given in payment for the tobacco, were charged to the account, and the account was credited by the sales made. The

amount expended in the purchase of tobacco was $13,105.28. On cross-examination, witness stated that the Tenth Street Tobacco Warehouse was a commission house and collected commissions on the tobacco. Defendant was not present when the contract with Gorin Brothers was signed, but defendant afterward approved the sale. Nothing was said between him and defendant as to how the profits or losses, if any, were to be divided. It was the custom, however, when one party furnished the money and attended to the sale of the tobacco and the other party attended to the buying, to divide the profits and losses equally between them.

R. A. Harpring was present on November 4th, when plaintiff called up the defendant. Plaintiff asked defendant if he wanted a partner in the purchase of tobacco. Plaintiff told defendant he would send him up there, and witness went there at the direction of plaintiff. He made three trips up there and assisted defendant in buying several crops. Defendant stated to him that he and Alexander were partners in the purchase of the tobacco. He told defendant that he thought he could get a certain price for the tobacco, at the same time saying: "I will see Mr. Alexander, and if it is satisfactory to him and satisfactory to you, we can sell it." Defendant said, "Well, go ahead, and if you can, sell it for us." Thereupon, he returned to Louisville, and the tobacco was sold to the Gorin Brothers. He wrote defendant about it and defendant wrote back that he was well satisfied. Afterwards, a crop was sold to Haley & Shelburne. Before the sale was made, defendant mentioned to plaintiff the price that he thought he could get for the tobacco, and plaintiff said that it was agreeable to him to sell it. In all these transactions he represented Mr. Alexander. He wrote several letters to defendant and received several letters in reply. On cross-examination, witness stated that defendant told him that Mr. Alexander was to have half of the profits. At that time he was solicitor for the Tenth street warehouse. A. E. Mitchell, the secretary and treasurer of the Tenth Street Tobacco Warehouse Company, testified that the accounts of the Tenth Street Tobacco Warehouse Company were kept in the name of R. F. Lewis & Company. He also exhibited a large number of drafts drawn by defendant in the name of R. F. Lewis & Company.

The defendant, R. F. Lewis, testified that he had been in the tobacco business for about two years and was also assistant postmaster. He had known plaintiff for about ten months. Never, at any time, was he in partnership with plaintiff. His contract with plaintiff was that plaintiff was to furnish the money to buy the tobacco and get his commission out of it. That was all the contract they had. He was to pay six per cent. for the money. The Tenth Street Tobacco Warehouse Company did not furnish all the money to buy the tobacco. He himself furnished about $4,000.00. The reason the account was kept in the name of R. F. Lewis & Company was that he had other accounts in the bank and did not want to get them mixed up. The tobacco which he purchased was shipped to the Tobacco Warehouse Company. The shipments sold elsewhere were made by the direction and with the consent of plaintiff. The shipment to Gorin Brothers was sold through the warehouse company.

The only shipment that was not thus sold was to Haley & Shelburne, and this sale was made with the consent of Mr. Alexander. Harpring came to Carter county as a representative of the Tenth Street Tobacco Warehouse. When Alexander called him over the 'phone, he had a hard time understanding him. He finally understood that Alexander wanted to send somebody up to help him out, as he was tied up in the post office. He told Alexander that that plan would suit him very well. Not at that time, or at any other time, did he state to Alexander that they were partners. Harpring wrote him a letter, in which he said, "I have sold your tobacco." He never saw the contract between Alexander & Lewis and Gorin Brothers. He never had any agreement with Alexander, by which the latter was to have half the profits. He told Alexander that if he had to have a partner, he would not engage in the business.

In rebuttal plaintiff denied that defendant had stated to him that he would keep the accounts in the name of R. F. Lewis & Company, so that they would not get mixed up. Harpring went as a representative of the plaintiff, and not as a representative of the warehouse company. Harpring testified that upon his arrival at Grayson, defendant stated that he fully understood defendant and plaintiff were partners. At the time he was representing Alexander, he was being paid by the month

by the Tenth Street Tobacco Warehouse Company. Mrs. L. S. Gatewood stated that she was present when Mr. Alexander called defendant, and heard Mr. Alexander say, "Do you want a partner?" She also heard him say, "I have a good man to send up and will send him tomorrow." He then turned to Harpring and asked him if he would go. Harpring said, "I will."

Several letters from defendant to plaintiff and Harpring were introduced, and in these letters defendant referred to purchases "I have made," and in some instances, to purchases "we have made."

In several of them defendant spoke of the prices at which the tobacco was purchased and asked Harpring to keep him advised as to market prices, as he didn't want to take any chances.

The circumstances relied on to show a partnership are defendant's statements to Harpring that he understood that he and plaintiff were partners; that the purchases were made, the drafts drawn and the accounts kept in the name of R. F. Lewis & Company; that portions of the tobacco were not shipped to the warehouse company, but were sold to Haley & Shelburne and to Gorin Brothers; that Harpring and plaintiff made the sale to Gorin Brothers, which they would not have done unless plaintiff had been a partner with defendant, and that defendant expressed his satisfaction with the sale upon being apprised of the terms thereof; that in speaking of some of the purchases he used the pronoun "we;" that plaintiff became responsible to the warehouse company for the money, which he would not have done had there been no partnership.

On the other hand, plaintiff, when he called defendant over the 'phone and asked him if he wanted to go in partnership with plaintiff in the purchase of tobacco, did not state what defendant's answer was. Plaintiff did not then agree to furnish the money, nothing was said about the profits and losses, and none of the terms of the alleged partnership were discussed. A portion of the money used in the purchase of the tobacco was advanced by defendant himself, and the other portion was loaned by the warehouse company and interest charged therefor. In none of the numerous letters introduced was the word "partnership" used. Defendant explained that the Gorin purchase was afterwards sold through the ware-

house, that the sale to Haley & Shelburne was made with plaintiff's consent, and that the accounts were kept in the name of R. F. Lewis & Company, so as not to conflict with other accounts kept in his own name. Harpring came as a representative of the warehouse company, and was paid by that company, and sent to Grayson to assist defendant because defendant could not devote all of his time to the work.

While it may be true that plaintiff believed that he had entered into a partnership with defendant, the evidence is by no means clear that the defendant understood that this was the case, or that there was ever a meeting of their minds on the question. It is our rule not to disturb the finding of the chancellor upon a question of fact, where the evidence is conflicting, and on a consideration of the whole case the mind is left in such doubt that we cannot say with reasonable certainty that the chancellor erred in his conclusion, and this rule is peculiarly applicable to the facts of this case. Hayes v. Hayes' Exr., 181 Ky. 589, 205 S. W. 596.

Judgment affirmed.